# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Gilberto Gonzalez-Diaz,

    Petitioner

v.

Todd Blanche,[1] et al.,

    Respondents

Case No.: 2:26-cv-00413-APG-BNW

**Order Granting in Part Petition for Habeas Corpus and Denying as Moot Petitioner's Motion for Temporary Restraining Order**

[ECF Nos. 7, 8]

Gilberto Gonzalez-Diaz is a noncitizen currently detained by Immigration and Customs Enforcement (ICE). ECF No. 7 at 1, 3. He entered the United States in 2022 without inspection but turned himself into immigration authorities. *Id.* at 4. He was detained for about two months and was released on his own recognizance under § 236 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1226.[2] *Id.*; ECF No. 15-1 at 2. He then filed an application for asylum. ECF No. 7 at 4. He cares for his brother, who has cancer and is a United States citizen. ECF No. 13-3 at 11-12.

In July 2025, Gonzalez-Diaz was arrested for possession of a controlled substance in Las Vegas, Nevada while he was a passenger in a friend's car. ECF No. 7 at 4. He was then

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Attorney General Todd Blanche is substituted for Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem.

[2] "[R]elease on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention." *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 493 (E.D.N.Y. 2025); *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding that the noncitizen was "conditionally paroled under the authority of § 1226(a)" when the government released him on his own recognizance soon after he entered the country); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (BIA 2023) ("The [noncitizens] were detained for a few days after their initial apprehension and then released on their own recognizance pursuant to DHS' conditional parole authority under section 236(a)(2)(B) of the [INA], 8 U.S.C. § 1226(a)(2)(B).")

transferred to the Nevada Southern Detention Center on an immigration hold. *Id.* at 1.  The Department of Homeland Security (DHS) issued him a Notice to Appear and commenced removal proceedings against him, alleging he was an alien present in the United States who has not been admitted or paroled in violation of § 212(a)(6)(A)(i) of the INA and that he did not possess valid documentation under § 212(a)(7)(A)(i)(I) of the INA. ECF No. 12-2 at 2, 5.  In August 2025, the district attorney denied prosecution for any charges arising out of the July 2025 arrest. ECF Nos. 7 at 4; 7-1 at 2.

Two months later, an Immigration Judge denied Gonzalez-Diaz's petition for asylum and ordered him removed to Cuba. ECF No. 12-3 at 2, 4.  He timely filed an appeal. *Id.* at 6.  In February 2026, he requested a custody redetermination from an Immigration Judge, who denied his request claiming the court lacked jurisdiction to grant a bond under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). ECF No. 12-4 at 2.  He remains detained today without having received a bond hearing. ECF No. 7 at 2.  He has yet to receive a decision on his appeal related to his asylum petition and removal order. ECF No. 7-2 at 3.

Gonzalez-Diaz filed this petition for habeas corpus, seeking his immediate release or an individualized bond hearing under 8 U.S.C. § 1226(a).  He argues there are two grounds for his petition.  First, he cannot be mandatorily detained under 8 U.S.C. § 1225(b)(2)(A) and instead § 1226(a) governs his detention, which entitles him to a bond hearing.  Second, his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.  He also filed a motion for a temporary restraining order, requesting his release or a bond hearing.

The government responded that he is properly detained under § 1225(b)(2)(A), which does not allow for a bond hearing.  The government's position on § 1225(b)(2)(A) reflects its new interpretation of the statute as outlined by interim guidance issued by DHS in July 2025.

2

Interim Guidance, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX. The Board of Immigration Appeals adopted the government's interpretation in *Matter of Yajure Hurtado*. 29 I&N Dec. 216, 229 (BIA 2025).

The best reading of § 1225 is that it applies only in the border context, and accordingly § 1226 governs Gonzalez-Diaz's detention. Therefore, I grant his petition for habeas corpus and order that he must be released from custody. I deny his motion for a temporary restraining order as moot.

## I.     PETITION FOR HABEAS CORPUS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

The parties dispute whether § 1225 or § 1226 of the INA governs Gonzalez-Diaz's detention. I have previously rejected the government's position, and I do so again here. *Rodriguez v. Mullin*, No. 2:26-cv-00531-APG-NJK, 2026 WL 895685 (D. Nev. Apr. 1, 2026).

Section § 1225(b)(2)(A) governs only inspections at the United States' international borders and thus cannot justify the detention of a noncitizen, like Gonzalez-Diaz, who was detained within the country. Instead, § 1226 governs the detention of noncitizens found within the country. As I did in *Rodriguez*, I incorporate by reference sections IV, VI.C.1, 2, and 4 of *Jacobo Ramirez v. Mullin*, No. 2:25-cv-02136-RFB-MDC, 2026 U.S. Dist. LEXIS 67643 (D. Nev. Mar. 30, 2026), regarding the text and structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and prior agency practice[3] and major questions implications for DHS's change in policy. 2026 U.S. Dist. LEXIS 67643 at *14-22, 29-75, 85-90. Additionally, I note that applying § 1226 to noncitizens residing within the United States, such that they may be eligible for a bond hearing under § 1226(a), is consistent with the longstanding distinction found throughout immigration law that "recognizes arriving noncitizens have less due process protections than those present and residing within the country's borders." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1154 (D. Nev. 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001)). Further, I reject the government's argument that I should adopt the Fifth Circuit's reasoning in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026) for the reasons I stated in *Rodriguez*. 2026 WL 895685, at *4.

Section 1226 applies to Gonzalez-Diaz's detention. He was detained years after he entered the country, far from an international border. Several courts have found that § 1226 applies to noncitizens when they, like Gonzalez-Diaz, were initially detained upon entering the United States, released on their own recognizance, and later detained again within the country.

---

[3] The government argues that prior agency practice no longer controls due to the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). But "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Loper Bright Enters.*, 603 U.S. at 386 (simplified).

*E.g. Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 481, 485-86 (S.D.N.Y. 2025); *Toro Rodriguez v. Baltazar*, No. 1:26-cv-02068-CNS, 2026 WL 820488, at *1-2 (D. Colo. Mar. 25, 2026); *M.R.R. v. Chestnut*, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *1, 10 (E.D. Cal. Nov. 24, 2025).

The government argues that under *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), § 1225 governs Gonzalez-Diaz's detention.  But *Q. Li* is distinguishable.  There, the noncitizen detainee was initially detained immediately after crossing the southern border and then released on parole under 8 U.S.C. § 1182(d)(5)(A). 29 I. & N. Dec. at 67.  Section 1182(d)(5)(A) allows the Secretary of Homeland Security to release noncitizens on parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  But it also states that "when the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." "Applicants for admission" are detained under § 1225. 8 U.S.C. § 1225(a), (b)(2)(A).  In *Q. Li*, because the noncitizen was initially released under § 1182(d)(5)(A), the Board of Immigration Appeals held that § 1225 applied when she was re-detained. 29 I. & N. Dec. at 69-71.

Here, Gonzalez-Diaz was initially released under § 1226, not § 1182(d)(5)(A), so no statute classifies him as an "applicant for admission" upon his return to custody.  Beyond its novel interpretation of § 1225, the government has not explained why § 1225 now applies to Gonzalez-Diaz when § 1226 governed his circumstances previously.  Therefore, *Q. Li* and § 1225 do not apply to Gonzalez-Diaz's detention.

The fact that Gonzalez-Diaz is appealing his denial of asylum does not mean he is "seeking admission" under § 1225(b)(2)(A).  Applying for asylum is seeking legal status in, not

admission into, the country. *Rodriguez*, 2026 WL 895685, at *4 (citing *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021)).

Finally, I must decide whether the proper relief is releasing Gonzalez-Diaz or ordering that the respondents provide him an individualized bond hearing under § 1226.  I have "equitable discretion" "as law and justice require" for remedying unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 134 (2022) (quotation omitted).  Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Given the particular facts of this case, releasing Gonzalez-Diaz is the appropriate remedy. An immigration officer previously determined it was proper to release him on his own recognizance in 2022.  A noncitizen is released under § 1226 by demonstrating by a preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (simplified).  When a DHS officer issues the decision to release a noncitizen under § 1226, "the [g]overnment's practice has been to require a showing of changed circumstances before re-arrest." *M.R.R.*, 2025 WL 3265446, at *3.

Here, since being released in 2022, Gonzales-Diaz has not been convicted of any criminal offenses. ECF No. 7 at 1.  He has community ties in a brother with cancer for whom he cares. The only changed circumstance is his arrest on a charge that was dismissed a month later.  That is his only criminal history.  This is not a sufficient change in circumstances to justify his return to custody. *See Arzate v. Andrews,* No. 1:25-cv-00942-KES-SKO (HC), 2025 WL 2230521, at *2, 6-7 (E.D. Cal. Aug. 4, 2025) (ordering a noncitizen released from detention because he had previously been released under § 1226, arrested for a misdemeanor, had no charges filed against

him, but was re-detained because of the arrest).  The government does not argue that Gonzalez-Diaz poses an additional risk of flight or danger to the community now.  Given that the government already determined that it was proper to release him on his own recognizance in 2022 and does not offer any explanation for why it is now proper to hold him in mandatory detention, beyond the recent reinterpretation of § 1225, I do not see any reason to prolong his detention. *Toro Rodriguez*, 2026 WL 820488 at *2.  Additionally, the nine months that he has been unlawfully detained without a bond hearing weigh in favor of his release. *See Quintana Chagolla v. Mattos,* No. 2:25-cv-02435-MMD-EJY, 2026 WL 524228, at *3 (D. Nev. Feb. 25, 2026) (ordering a noncitizen released in part because of his "prolonged detention" of ten months).  Therefore, I grant Gonzalez-Diaz's petition and order his release.  Accordingly, I deny his motion for a temporary restraining order as moot.

## II.        CONCLUSION

I THEREFORE ORDER that petitioner Gilberto Gonzalez-Diaz's petition for habeas corpus **(ECF No. 7) is GRANTED**.

I FURTHER ORDER respondent John Mattos to release Gilberto Gonzalez-Diaz from the custody of CoreCivic on Wednesday, April 8, 2026, no later than 1:00 p.m.  The respondents must transport Gonzalez-Diaz to 501 Las Vegas Blvd. South, Las Vegas, Nevada that same day. Gonzalez-Diaz is being released on his own recognizance subject to the conditions of release previously imposed upon him by the Immigration Officer prior to his most recent detention, ECF No. 15-1.

I FURTHER ORDER that the respondents are permanently enjoined from re-detaining Gonzalez-Diaz unless they demonstrate, by clear and convincing evidence at a pre-deprivation, individualized bond hearing under § 1226(a), that Gonzalez-Diaz is a flight risk or danger to the

community such that his physical custody is legally justified.  At any such bond hearing, the government will bear the burden of proof.

I FURTHER ORDER that Gonzalez-Diaz's motion for a temporary restraining order **(ECF No. 8) is DENIED as moot.**

I FURTHER ORDER the clerk of the court to close this case.

DATED this 6th day of April, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE